UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DANNY R. BLANTON, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CAUSE NO.: 3:15-CV-44-RLM-CAN |
| | ) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| | ) |
| DEFENDANT. | ) |

OPINION and ORDER

Plaintiff Danny Blanton seeks judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision denying his application for disability benefits. Mr. Blanton asks the court to set aside the August 27, 2014 decision by an Administrative Law Judge finding that while he has two severe impairments and can't do his past relevant work, he retains the capacity to perform a limited range of light work and so is not disabled. The court has jurisdiction over this action under 42 U.S.C. §§ 405(g). For the reasons that follow, the court reverses and remands this case to the Social Security Administration for further proceedings consistent with this opinion.

I. BACKGROUND

Mr. Blanton, a 43-year old former machine operator and production supervisor, filed for disability benefits in January 2012, alleging a disability onset date of April 2010. He claimed that he was unable to work due to seizures,

insomnia, depression, anxiety, and hypomania.[1] His application was denied initially and on reconsideration, and the ALJ held a hearing at which Mr. Blanton, his sister, and a vocational expert testified.

The ALJ issued a written decision, finding that Mr. Blanton met the insured status requirements under the Social Security Act and had not engaged in substantial work since the alleged onset date of April 2010. The ALJ found that Mr. Blanton's seizures, hypomania, and insomnia were severe impairments, and concluded that while these impairments left Mr. Blanton with the physical capacity to perform work at all exertional levels, he has several non-exertional limitations. These limitations precluded Mr. Blanton from jobs that involve driving, unprotected heights, dangerous machinery, open flames, sharp objects, or climbing. The ALJ also found that Mr. Blanton was limited to low-stress jobs with little decision making and few changes to the work setting, and to jobs that require only simple or routine tasks consistent with unskilled work. Because the vocational expert testified that there are sufficient jobs available that fit these limitations, the ALJ found Mr. Blanton not disabled.

II. STANDARD OF REVIEW

The court must affirm the Commissioner's determination if it is free of legal errors and supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

---

[1] Hypomania is a psychological state similar to but less severe than mania. There is very little in the record or in the ALJ's opinion about Mr. Blanton's hypomania, and it isn't important to any of the arguments Mr. Blanton makes in this appeal.

substantial evidence, shall be conclusive"); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011). The issue before the court isn't whether Mr. Blanton is disabled, but whether substantial evidence supports the ALJ's finding that he isn't disabled. Id. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Micus v. Bowen, 979 F.2d 602, 604 (7th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). In deciding whether substantial evidence supported the ALJ's decision, the court "reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998). In reviewing the ALJ's conclusions, "[t]he court will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005).

The ALJ isn't required "to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The court can't uphold an ALJ's decision if "contradictions or missing premises" undermine this bridge. Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010).

III. Discussion

Mr. Blanton argues that the ALJ made four errors that require remand: (1) giving the opinion of treating neurologist Dr. Curfman only partial weight; (2) concluding that Mr. Blanton's insomnia was a severe impairment yet not incorporating it into the RFC; (3) discounting the opinions of Tom Whitehead and Diane Sigler, Mr. Blanton's former employers; and (4) finding Mr. Blanton's testimony not credible. The last of these arguments warrants reversal, so the court discusses it first. None of Mr. Blanton's other arguments for reversal are persuasive, but because the issues they identify might recur on remand, the court discusses them briefly.

*A. Credibility*

Mr. Blanton testified at the hearing that he has problems with talking, memory, completing tasks, concentrating, understanding and following instructions, and getting along well with others. He said his seizures started in 2002 but have gotten worse, and now happen two or three times per month. After a seizure he has soreness, fatigue, confusion, and difficulty concentrating. Mr. Blanton also testified that he has a pre-seizure "aura" feeling about every day, and is afraid and embarrassed about having a seizure in public because he doesn't know when one will occur. As to insomnia, he stated that he wakes up every hour or two and often naps during the day.

The ALJ found that Mr. Blanton's testimony about the persistence and intensity of his symptoms was not fully credible for two reasons. First, the ALJ noted that Mr. Blanton "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms, limitations, and social functioning." Second, the ALJ reviewed the objective medical evidence in the record and concluded that Mr. Blanton's "testimony of frequency is not consistent with the medical evidence of record."

Because the ALJ is in the best position to judge the credibility of parties, a reviewing court "will not disturb an ALJ's credibility findings unless they are patently wrong." Sims v. Barnhart, 309 F.3d 424, 431 (7th Cir. 2002). Still, an ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear…the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p. A credibility determination may thus be "patently wrong" if it "lacks any explanation or support." Elder v. Astrue, 529 F.3d 408, 413-414 (7th Cir. 2008).

The ALJ's adverse credibility findings were patently wrong because they weren't adequately explained. With regard to daily activities, the ALJ simply noted that Mr. Blanton was "able to perform personal care, clean his room, do his laundry, shop in stores, handle his finances, spend time with family, and perform hobbies such as watching television and reading," and stated that these activities don't suggest limitations as serious as Mr. Blanton described. The ALJ didn't explain how any of these activities are inconsistent with Mr. Blanton's

testimony about his symptoms. As already noted, the non-seizure symptoms Mr. Blanton reported were things like difficulty concentrating, following instructions, or getting along with others. It isn't clear how the very simple chores and leisure activities Mr. Blanton described would be impossible in light of those symptoms. Mr. Blanton would certainly be incapable of all these things during a seizure, but he testified that his seizures occur only a few times per month. The ALJ apparently saw these activities as inconsistent with Mr. Blanton's claimed symptoms, but didn't identify where she perceived the inconsistency to be. The conclusory statement that Mr. Blanton's activities aren't what one would expect given his symptoms doesn't make clear "the weight the adjudicator gave to the individual's statements and the reasons for that weight" as required by the Social Security regulations.

The purported inconsistency between Mr. Blanton's claimed frequency of symptoms and the objective medical evidence is similarly unexplained. The ALJ reviewed the medical evidence in some detail, but simply recited it and made no attempt to compare any of it to Mr. Blanton's testimony. Nor is any inconsistency apparent: a 2002 EEG was mildly abnormal in the awake state; Mr. Blanton reported weekly seizures in 2012 and stopped driving after crashes in 2011; his concentration during a medical interview was "fair to limited"; he suffered a grand mal tonic seizure in 2013 and reported having a seizure a few weeks before that; doctors noted in May 2013 that his seizures were changing from simply staring spells to more generalized seizures; and he was diagnosed with intractable seizures, hypomania, and depression. Far from contradicting Mr.

Blanton's testimony about the frequency and intensity of his seizures, all of that evidence seems to support it.

The one piece of medical evidence the ALJ may have thought inconsistent with Mr. Blanton's claimed frequency of symptoms – though, again, this is speculation because the ALJ didn't point to any specific piece of evidence – is the imaging results from 2013, when a CT scan showed no acute intracranial abnormality and an EEG was minimally abnormal. Because the ALJ agreed that Mr. Blanton suffers from seizures, she might have thought those imaging results consistent with a seizure disorder yet indicative of fewer than two or three seizures per month. But the ALJ didn't explain how the scan results are incompatible with Mr. Blanton's testimony that he has two or three seizures per month and auras every day; it isn't evident to a non-doctor what, if anything, those specific scan results would mean for a seizure disorder, and no medical opinion evidence in the record interpreted what frequency of seizures they would suggest.

Accordingly, the ALJ's decision must be reversed because its finding that Mr. Blanton's testimony was not credible isn't adequately supported. An ALJ need only explain his or her reasons for doubting a claimant's credibility, and a reviewing court ordinarily won't second guess those reasons. But if the ALJ doesn't explain the reasons at all, meaningful review is impossible and the case must be remanded.

*B. Dr. Curfman's Opinion*

Mr. Blanton also challenges the ALJ's decision to assign only partial weight to a medical source statement provided by Mr. Blanton's long-time neurologist, Dr. Thomas Curfman. Dr. Curfman completed a seizures medical source statement in January 2013 and reported that Mr. Blanton has an average of two seizures per month, has a few seconds of warning before a seizure, requires two hours of rest after a seizure, and has daily "auras" even on days in which he doesn't suffer a seizure. Because Dr. Curfman found that stress could precipitate Mr. Blanton's seizures, he concluded that Mr. Blanton is incapable of even low stress work. He also indicated that Mr. Blanton's symptoms would cause him to miss work about three days a month, and that the symptoms and limitations described in the medical source statement existed since 2002. The ALJ assigned Dr. Curfman's opinion only partial weight, reasoning that it was internally inconsistent --- specifically, that it stated Mr. Blanton had only two seizures per month yet would be likely to miss more than three days of work per month --- and that it said Mr. Blanton's symptoms existed since 2002, when in fact Mr. Blanton held down a full-time job from 2002 to 2010.

Mr. Blanton first objects that the ALJ didn't clarify what she meant by "partial weight." Social Security Rule 96-2p, on which Mr. Blanton relies, requires only that an ALJ's decision "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." The ALJ's opinion identified Dr. Curfman's findings, stated that those findings were entitled to only partial

weight, and articulated two specific reasons why they weren't entitled to greater weight. Nothing more is required.

Mr. Blanton also argues that the ALJ should have given Dr. Curfman's opinion more weight because Dr. Curfman was a neurology specialist and had a long treatment relationship with Mr. Blanton. While an ALJ must consider factors such as a doctor's specialties and length of treatment relationship with a patient, nothing requires an explicit written discussion of every factor the Social Security regulations identify as relevant. *See* Elder v. Astrue, 529 F.3d 408, 415-416 (7th Cir. 2008) (affirming denial of benefits where, as here, the ALJ discussed only two of the 20 C.F.R. § 404.1527 factors). Having explained why two particular factors justified her conclusion, the ALJ didn't need to recite the other factors.

Next, Mr. Blanton argues that the ALJ mischaracterized Dr. Curfman's opinion. Dr. Curfman said that Mr. Blanton would have to miss "about three" days of work per month, but the ALJ's opinion mistakenly states that Dr. Curfman said "over three days." This was no more than a minor error; the ALJ's real point was that Dr. Curfman's three-day estimate of days missed was inconsistent with his estimate of only two seizures per month. Mr. Blanton argues that one of the missed days could be due to insomnia --- which Dr. Curfman also found Mr. Blanton to suffer from --- rather than seizures. The medical source statement Dr. Curfman completed, however, was specifically for seizures. Moreover, the very next question instructed the doctor to add an additional page to "to describe any other limitations… that would affect your

patient's ability to work at a regular job on a sustained basis." If Dr. Curfman thought Mr. Blanton's insomnia was a significant limitation on his ability to work, this question invited the doctor to attach a page explaining that. The record reflects no attachment, so the ALJ's reading of the form --- finding that Mr. Blanton would have two seizures a month yet miss three days a month *due to seizures* --- wasn't unreasonable.[2]

Lastly, Mr. Blanton argues that the ALJ erred by considering his employment from 2002-2010 as a reason to discount Dr. Curfman's findings. He relies on <u>Wilder v. Chater</u>, in which the court of appeals made clear that proof of a claimant's employment during the period of alleged disability doesn't automatically defeat a claim for benefits. 64 F.3d, 335, 337-338 (7th Cir. 1995) ("The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity or his employer may be lax or altruistic."). This argument is unavailing because while a demonstrated ability to hold down a full-time job isn't conclusive proof that a claimant wasn't disabled at the time, it can be relevant. *See* <u>Berger v. Astrue</u>, 516 F.3d 539, 546 (7th Cir. 2008) (affirming denial of benefits where claimant continued part-time work as a carpenter past the alleged onset date, because "the fact that he could perform some work cuts against his claim that he was

---

[2] While the ALJ didn't note it, there is also the problem that Mr. Blanton's two seizures per month wouldn't necessarily come during working hours. Dr. Curfman's medical source statement found that the seizures don't occur at a particular time of day. A 40-hour workweek represents less than a quarter of the total hours in a week, so even if Mr. Blanton only had seizures when awake and was only awake for half the hours in a day (an unrealistically generous sleeping schedule even for someone without insomnia), he would on average only have one seizure per month *while at work*. That makes Dr. Curfman's unexplained conclusion that Mr. Blanton would miss an average of three days per month even more perplexing.

totally disabled."). The sheer length of time Mr. Blanton was able to continue full-time work despite symptoms that Dr. Curfman considered totally disabling --- eight years --- strongly suggests that Dr. Curfman is mistaken or unreliable regarding the extent of Mr. Blanton's limitations.

*C. Insomnia*

The ALJ included insomnia among Mr. Blanton's severe impairments, but didn't explicitly refer to insomnia when determining Mr. Blanton's residual functional capacity. Mr. Blanton argues that this omission is significant: if the ALJ found insomnia to be a severe impairment it must have caused functional limitations, yet the RFC doesn't mention of those limitations. Under 20 C.F.R. § 404.1512(c), Mr. Blanton has the burden of showing not only that he has an impairment but also "how [his] impairment(s) affects [his] ability to work." Dr. Curfman's opinion noted insomnia as an impairment, but contained nothing else beyond the label. A diagnosis alone isn't enough to show disability; a claimant must present some evidence tying that diagnosis to functional limitations. *See* Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998). The only evidence in the record of what effect insomnia had on Mr. Blanton's functioning was his own testimony that he wakes up every hour or two and takes naps during the day. The ALJ found Mr. Blanton's testimony about his symptoms and limitations not credible, and also noted that Mr. Blanton reported getting five or six hours of sleep per night. Given the absence of any evidence about how Mr. Blanton's insomnia affected his ability to work, there was no need for the ALJ to speculate about

possible limitations and include these speculations in the functional capacity finding.

*D. The Opinions of Mr. Whitehead and Ms. Sigler*

The record before the ALJ contained brief statements about Mr. Blanton's job performance from two past employers, Tom Whitehead and Diane Sigler. Mr. Whitehead was Mr. Blanton's manager for many years, and said Mr. Blanton was a good worker but eventually began to have medical issues, disruptive outbursts, and poor attendance. Ms. Sigler was an HR representative at a company that Mr. Blanton worked at for less than three weeks, and testified that Mr. Blanton was fired for absenteeism and not completing enough work. The ALJ noted that these statements generally support Mr. Blanton's claims, but assigned them little weight because they don't establish that Mr. Blanton is disabled, neither employer is medically trained to make precise observations about symptoms, and the statements are not consistent with the medical evidence as a whole.

Mr. Blanton argues that the ALJ erred in assigning these statements little weight, because when read in light of Dr. Curfman's opinion they establish that Mr. Blanton is disabled. All the letters show is that Mr. Blanton skipped work too frequently and was sometimes inefficient or disruptive when he did show up. As the ALJ noted, this testimony doesn't speak to whether Mr. Blanton was disabled; neither statement connects Mr. Blanton's absenteeism or poor workplace behavior to his impairments or symptoms. While Dr. Curfman's opinion noted that Mr. Blanton's seizures would cause him to miss work, it

doesn't follow that *any* time he missed work must have been due to seizures. Because the ALJ rightly recognized that the evidence was not helpful on the question of whether Mr. Blanton was disabled, she was justified in giving it little weight.

IV. CONCLUSION

For the reasons stated above, the Commissioner's denial of benefits is REVERSED and this case is REMANDED with instructions to return the matter to the Social Security Administration for further proceeding consistent with this opinion.

SO ORDERED.

ENTERED: March 21, 2016

/s/ Robert L. Miller, Jr.<br>Judge<br>United States District Court